

**Seyfarth Shaw LLP**
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia  30309-3958
**T** (404) 885-1500
**F** (404) 892-7056

lhaas@seyfarth.com
T (404) 704-9696

www.seyfarth.com

May 30, 2024

<u>VIA ECF</u>
The Honorable Jessica G. L. Clarke
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007

**Re:**   *Lazaar, et al. v. The Anthem Companies, Inc.*, et al., No. 1:22-cv-3075 (JGLC)
    Plaintiffs' Letter-Motion to Compel Defendants' Production of Documents

Dear Judge Clarke:

Defendants The Anthem Companies, Inc., Empire Healthchoice HMO, Inc., Empire Blue Cross HMO, and Healthplus HP, LLC submit this letter response to Plaintiffs' letter motion to compel the production of documents (Doc. 97). Additionally, and stemming from the same conferral process that culminated with Plaintiffs' filing of their letter, Defendants ask this Court to dismiss Opt-In Plaintiffs Angela Paluch, Quintella Lauderdale, and Scheherazade Gilligan for their refusal to sit for a deposition as ordered by this Court.

### A.   The Parties' Meet-and-Confer and Timing of Plaintiffs' Purported Compliance with this Court's Individual Rule 4(k).

Plaintiffs' recitation accurately reflects the timing of the parties' efforts to resolve their disputes prior to Plaintiffs seeking Court intervention. Defendants highlight two additional important points that Plaintiffs' summation omits or downplays.

First, Plaintiffs chose to submit their proposed letter to Defendants, and thus trigger this Court's 72-hour rule, at 4:46 pm Eastern on the Friday before the three-day weekend ending with a federal holiday on Monday, May 27, 2024. Defense counsel had prearranged plans with family over the course of that weekend, as many Americans do for Memorial Day. Plaintiffs could have sent their letter earlier in the week; they chose to wait until just before close of business on a Friday. Ultimately, Plaintiffs gave Defendants about two business days—half of which was spent in conferral—between the time that they sent their conferral letter to Defendants and filed their letter motion with this Court.



Second, the parties' continued conversations between May 24 and May 28 changed the contents of Plaintiffs' letter substantially It was not clear to Defendants until after the March 28 conferrals that a letter would in fact be filed or what the precise contents of the letter would be.[1] Defendants saw a letter draft on March 24, but never saw the letter ultimately filed until its filing. While some portions of the letter remain similar to that shown Defendants on March 24, many do not.[2]

All of that is to say that Defendants believe it would not be in the interest of justice to disregard their response to Plaintiff's letter motion even though a first draft of that motion was sent at 4:46 pm on the Friday before a three-day holiday weekend. No party would suffer any prejudice from considering this filing, and doing so will give this Court the fullest picture with which to resolve the merits of the parties' disputes, if it chooses to do so despite Plaintiffs filing their letter only two days before the close of discovery. *See* Individual Rule 4(k) ("[I]f a party waits until near the close of discovery to raise an issue that could have been raised earlier, the party is unlikely to be granted the relief that it seeks or more time for discovery.").

### B. Plaintiffs Have Failed to Produce Three Opt-In Plaintiffs for Deposition[3]

---

[1] Indeed, as the conferral correspondence makes clear, Defendants strongly believed this matter should never have made its way to this Court and said as much to Plaintiffs' counsel.

[2] The conferral piece in particular has materially changed (to say nothing of the interrogatory section that no longer exists). Whatever Defendants might have submitted in that regard in response to the March 24 letter would not be what they now submit.

[3] Plaintiffs also cancelled the remote deposition of Amina Williams, originally scheduled for 2:00 pm on May 31, shortly before this filing.  Defense counsel learned on May 29, after noticing the deposition, that power to their building would be cut before the deposition ended and therefore asked if Ms. Williams could start an hour earlier, at 1:00 pm.  On May 30, 2024, at 1:39 pm, Plaintiff's counsel said Ms. Williams could not, unilaterally cancelled the deposition, and said they "were working to obtain her availability."  The undersigned asked if that meant Plaintiffs would make Ms. Williams available after the close of discovery.  As of the time of this filing, Plaintiffs' counsel has not responded.  Should Plaintiffs ultimately offer to make Ms. Williams available after the May 31 discovery deadline, Defendants are happy to oblige.  Such an offer, however, would set a double standard where Plaintiffs are free to flaunt deadlines and discovery rules but demand strict compliance by Defendants.



Plaintiffs come to this Court asking for relief from Defendants' alleged discovery deficiencies with unclean hands.[4] Despite valid notices being served on March 27, 2024, Plaintiffs have failed to produce (or even provide availability for) Opt-In Plaintiffs Angela Paluch, Quintella Lauderdale, and Scheherazade Gilligan for deposition. This violates this Court's scheduling order, which permitted Defendants to depose each of the salaried registered nurses who joined this case despite Plaintiffs' arguments that Defendants should be limited to only a sampling.

Defendants have made every effort to obtain the testimony of these Plaintiffs, to no avail. If they refuse to participate in this litigation as apparently, they have, they should be dismissed from this case. Because Plaintiffs' counsel has refused to voluntarily withdraw their consents to join, Defendants ask that this Court order that Plaintiffs Gilligan, Paluch, and Lauderdale be dismissed.

If the Court is disinclined to dismiss them, Defendants ask that it order Gilligan, Paluch, and Lauderdale to sit for depositions no later than June 30 and extend discovery until that date to accommodate that order with a corresponding extension to the recently proposed dispositive motions and class certification deadlines.

### C.   Plaintiffs' Letter is Premature

As Plaintiffs note, the parties conferred three weeks ago, on May 8, 2024, about Defendants' objections to Plaintiffs' discovery requests and the scope and contents of their document production and interrogatory responses. That conferral was productive. The parties came to agreements whereby Plaintiffs limited certain requests and Defendants moved past certain objections.

The production commitments Defendants made entail production of literally millions of documents on top of the thousands already produced (never mind the thousands more that the parties have cross-designated from productions in related cases). Since the May 8 conferral, Defendants have made additional productions. Those have included almost 600 documents spanning thousands of pages. Those materials have been responsive to Request Nos. 11, 12, 13, and 23.

Defendants are in the process of collecting, processing, reviewing, and producing millions more documents. Those include email mailboxes for agreed upon opt-in

---

[4] It has always been Defendants' strong preference that the parties cooperatively work through deposition scheduling and other discovery issues among themselves rather than involve the Court. There are plenty of options that remain to resolve each side's concerns. But Plaintiffs have rejected that approach in filing their letter motion. Defendants are thus compelled to bring the issue of these three Plaintiffs' refusal to participate in litigation to the Court's attention.



Plaintiffs and their supervisors, as well as documents responsive to Request Nos. 2, 3, 4, 6, 7, 11-12, 9 (to the extent any exist), 14, 16, 26, 27, and 31. To the extent that any responsive documents remain unproduced after discovery closes on May 31, Defendants have committed to producing those as well.[5]

As Plaintiffs note repeatedly in their responses to Defendants' discovery requests (responses that Plaintiffs have a habit of supplementing less than 24 hours before their depositions), discovery is continuing. Moving to compel three weeks after the parties conferred and set the parameters of Defendants' responses and productions is the quintessence of jumping the gun. Plaintiffs artificially created urgency occasioned by their waiting until two days prior to the close of discovery to come to this Court should not be rewarded. *See* Individual Rules 4(k) ("[I]f a party waits until near the close of discovery to raise an issue that could have been raised earlier, the party is unlikely to be granted the relief that it seeks or more time for discovery.").

### D. Contracts Between Defendants and Government Entities (Request No. 29)

The parties have conferred repeatedly about Plaintiffs' demand that Defendants produce "all documents relating to agreements between Defendants and any government agency or entity in the last six years that provide for performance of utilization management services by Defendants and their employees."

For starters, that request is overbroad and disproportionate to the needs of this case. This case is all about the duties that Plaintiffs performed as salaried registered nurses—and layered topics within that inquiry, such as their training and their judgment in assessing a member-patient's clinical files to determine whether their requested medical procedure was medically necessary. Sending Defendants down a rabbit hole to obtain any document relating to any agreement with a government agency concerning utilization management is hardly relevant to Plaintiffs' day-to-day duties, a topic that has been the focus of thousands of documents and other written discovery. Plaintiffs' request, moreover, encompasses documents beyond the agreements themselves, arguably including sensitive (and possibly privileged) drafts of those agreements, internal communications about those agreements, and more.

What's more, at least two of the agreements Plaintiffs now seek (state benefits and local) are extremely sensitive materials that bear on Defendants' competitive advantage

---

[5] In the same vein, Defendants have agreed (indeed, it was Defendants' idea) to conduct a 30(b)(6) deposition on June 20, well after the close of discovery, because of conflicts between its designee's availability and that of both parties' attorneys.

Case 1:22-cv-03075-JGLC   Document 101   Filed 05/31/24   Page 5 of 6



in the New York market. Their production without any protection of Defendants' business interests would unnecessarily risk harm to Defendants.

Finally, it's unclear why the testimony Plaintiffs have obtained, and presumably will obtain at the upcoming 30(b)(6) deposition given their topics of inquiry, is insufficient They have had, and will have, the freedom to ask whatever they want about those agreements, to people with knowledge of them (including Defendants' corporate designee). Given the documents' sensitivity, that testimony should suffice absent entry of a protective order.

Perhaps recognizing the problems with their original request, Plaintiffs have agreed to seek only the production of three contracts—those regarding New York Medicaid, the New York State Benefit plan, and the New York State Local plan. Defendants appreciate the compromise. But all three of those contracts are large documents that govern wide-ranging relationships and touch aspects of those relationships far beyond utilization management. Pricing of Defendants' services, payment for those services, how the parties to the agreements will address conflict over provisions, and much more are the subject of these contracts. There's no legitimate need for the majority of what these documents contain.

Although Defendants continue to believe production burdens are disproportionate to the needs of this case particularly given deposition testimony about these agreements, they have agreed to produce the portions of those contracts that pertain to utilization management so long as production can be pursuant to a protective order (Defendants sent Plaintiffs a proposed protective order that tracks this Court's template, first on May 10 and then again on May 16; as of 1:00 pm Eastern on May 30, they've yet to receive a response). Defendants have also agreed to produce any table of contents to those agreements (Plaintiffs' letter omits that detail) to enable Plaintiffs to assess if unproduced portions of the agreements may be relevant to this case.

Plaintiffs refused to agree to that compromise. If the Court is inclined to order production of the agreements, Defendants ask that it do so within the reasonable limits that Defendants propose.

## CONCLUSION

Defendants believe that the parties could have resolved the disputes raised in their letters without the need for Court involvement. Plaintiffs pulled the plug on those efforts and did so at the last minute, just before a three-day federal holiday weekend, ultimately filing their letter only two days before the close of discovery.



The Honorable Jessica G. L. Clarke
May 30, 2024
Page 6

Under those circumstances, Defendants believe one of three courses of action is appropriate: (1) deny all relief sought because it is too "near the close of discovery to raise . . . issue[s] that could have been raised earlier," *see* Individual Rule 4(k); (2) extend discovery until June 30, with a corresponding extension to dispositive motions and class certification deadlines, and order Plaintiffs Gilligan, Paluch, and Lauderdale to sit for depositions, and permit production of the three contracts sought in Request No. 29 under the conditions Defendants have proposed; or (3) extend discovery until June 30 and order the parties to confer further.

Very truly yours,

SEYFARTH SHAW LLP

*/s/ Lennon B. Haas*

Lennon B. Haas

Plaintiffs' motion to compel (ECF No. 97) is GRANTED with respect to the documents Defendants agreed to produce as outlined herein. The deadline for Defendants to produce such documents is **June 10, 2024.** With respect to the contracts, it appears that the parties are close to a resolution of this issue. The parties are directed to further confer about producing relevant portions of the three contracts, along with a proposed protective order. The parties are also directed to confer further regarding the depositions of the three opt-in Plaintiffs (*see* ECF No. 98) and a proposed discovery extension.

The case management conference scheduled for **June 12, 2024 at 10:00 a.m.**, *see* ECF No. 78, will take via Microsoft Teams. Counsel will receive Microsoft Teams log-in credentials at the email addresses listed on the docket. The public listen-only line may be accessed by dialing: 646-453-4442 | Access Code: 191 322 682#.

The Clerk of Court is directed to terminate ECF No. 97.

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge
Dated: May 31, 2024
        New York, New York